DENNIS KENNY, Plaintiff-Appellee, v. ASSURANCE COMPANY OF AMERICA, Defendant-Appellant.

First District (2nd Division)    No. 1—00—2739

Opinion filed September 18, 2001.

McKenna, Storer, Rowe, White & Farrug, of Chicago (James P. DeNardo, Richard M. Clark, and Kristin Dvorsky Tauras, of counsel), for appellant.

Pretzel & Stouffer, Chtrd., of Chicago (Robert Marc Chemers and Andrew W. Witik, of counsel), for appellee.

JUSTICE BURKE delivered the opinion of the court:

Defendant Assurance Company of America (Assurance) appeals from an order of the circuit court granting plaintiff Dennis Kenny's renewed motion for summary judgment and from an order vacating the trial court's prior grant of summary judgment to Assurance. On appeal, Assurance contends that the trial court erred in granting summary judgment in favor of Kenny because Kenny, by allowing entry of a dismissal order in a separate lawsuit filed by him against Gregory Burdo based upon an accident in which Burdo was driving a vehicle that rear-ended a vehicle in which Kenny was a passenger and which was also the accident underlying Kenny's claim against Assurance, extinguished any subrogation rights Assurance possessed against Burdo and, therefore, Assurance was not liable for underinsured motorist benefits to Kenny. For the reasons set forth below, we affirm.

## STATEMENT OF FACTS

Kenny was injured on December 21, 1989, while riding in a vehicle operated by Scott Kent and owned by Bill Sullivan Pontiac, Kenny's and Kent's employer, when the vehicle was rear-ended by a car driven by Burdo. Kenny's employer was insured under a policy issued by Assurance. The policy contained an uninsured motorist limit and an underinsured motorist limit of $1 million and provided that Assurance would make damage payments to the insured, but

"only after all liability bonds or policies have been exhausted by judgments or payments, unless we:

a. Have been given written notice in advance of a settlement between an 'insured' and the owner or operator of the 'underinsured motor vehicle;' and

b. Decide to advance payment to the 'insured' in an amount equal to the tentative settlement."

The policy further provided that "[a]ny judgment for damages arising out of a 'suit' brought without written notice to [Assurance was] not binding on [it]." The policy also contained an exclusion provision that the policy would not apply if "[a]ny claim [was] settled without [Assurance's] consent." Lastly, the policy provided that if the insured was

entitled to recover damages from another, those rights were transferred to Assurance and that the insured "must do everything necessary to secure [Assurance's] rights and must do nothing after 'accident' or 'loss' to impair them."

On November 28, 1990, because Kenny's counsel had been advised by the State of Illinois that Burdo was uninsured, Kenny notified Assurance of his claim for uninsured benefits, and the parties agreed to arbitrate this claim. On October 16, 1991, Kenny filed a negligence action against Burdo (the *Burdo* case). Kenny's action was dismissed, but Kenny later refiled it. In September 1992, Kenny's counsel forwarded a demand letter to Assurance, seeking $800,000 under the policy.

In February 1994, Kenny requested a copy of the insurance policy but never received one. In November, Kenny requested that Assurance make a settlement offer. There is no evidence in the record that Assurance responded to this request.

In June 1995, Assurance learned that Burdo was in fact insured with Allstate and had a policy with a limit of $100,000. Although Assurance offered the services of its counsel to Allstate to represent Burdo, Allstate retained its own counsel. Assurance then requested to be kept informed of any negotiations with Kenny. Thereafter, Kenny's claim against Assurance was suspended. On July 20, 1995, Kenny's counsel wrote to Assurance, recognizing its subrogation rights and asking it to take over representation of the lawsuit against Burdo. There is no evidence in the record whether Assurance responded to this letter.

On November 3, 1997, Kenny and Burdo reached a settlement in the amount of $100,000, Burdo's policy limit. On November 6, at a case management conference, Burdo's counsel had the court enter an agreed order dismissing the case with prejudice based on the parties' settlement of Kenny's claim. The order further provided that "[s]aid dismissal shall be a bar to the bringing of any action against the Defendant based on or including the claim for which this action has been brought." On November 10, Kenny signed an unlimited general release of all claims against Burdo. On November 18, Kenny's counsel wrote to Assurance with respect to the settlement, attaching a copy of the release, renewing his demand for underinsured benefits, and specifically asking Assurance whether Kenny should retain Allstate's settlement draft. There is no evidence in the record that Assurance responded to Kenny's letter.

On December 1, Burdo's counsel wrote to Assurance, advising it that Burdo had settled with Kenny and attaching a copy of the release. On December 5, Burdo's counsel faxed a copy of the release and dis-

missal order to Assurance. In response, Assurance wrote to Kenny on December 31, denying underinsured benefits to him based on its contention that Kenny had violated the terms of the insurance policy by failing to advise Assurance of a limits offer prior to settlement and by settling the claim without Assurance's consent, thereby extinguishing Assurance's subrogation rights.

On April 14, 1998, Kenny's counsel wrote to Assurance, reiterating his request that Assurance either settle or submit Kenny's underinsured claim to arbitration. On May 11, Kenny filed a complaint against Assurance to compel arbitration and seeking penalties based on Assurance's bad faith conduct. In its answer, Assurance denied all the allegations of the complaint. Assurance also filed a counterclaim against Kenny (denying coverage based on the settlement without consent policy exclusion) and a third-party complaint against Allstate and Burdo (seeking a declaration that it was not barred from pursuing its subrogation rights).[1]

On March 15, 1999, Kenny filed a motion for summary judgment, contending that the settlement of his action against Burdo did not prejudice Assurance's subrogation rights because Allstate knew of Assurance's rights and the release did not cover Assurance's subrogation interest. On June 11, Assurance filed a cross-motion for summary judgment, contending that Kenny was not entitled to underinsured benefits because his settlement of the *Burdo* case violated the insurance policy and he settled and dismissed the claim against Burdo without Assurance's consent or knowledge and, therefore, Assurance was prejudiced because its subrogation rights against Burdo were barred. On September 14, the trial court denied Kenny's motion for summary judgment and granted Assurance's motion for summary judgment, finding that Kenny, by virtue of allowing dismissal of the *Burdo* case with prejudice, abrogated and defeated any right Assurance would have by way of subrogation and, therefore, Assurance was not obligated to arbitrate Kenny's claim. On October 14, Kenny filed a motion to reconsider. The trial court granted the motion on February 16, 2000, and also vacated its previous order granting summary judgment to Assurance. The court concluded that it had erroneously placed the burden of proof on Kenny rather than requiring Assurance to prove the applicability of the policy's exclusion provision. On March 27, Kenny filed a renewed motion for summary judgment, which the trial court granted on July 18. In its order, the court made specific findings and conclusions of law, including: (1) the general release

---

[1]Assurance voluntarily dismissed its complaint against Burdo and Allstate on April 24, 2000.

signed by Kenny "did not include an amount specifically designated as covering [Assurance's] subrogation interest"; (2) the general release did not prejudice Assurance's subrogation rights because Burdo and Allstate were aware of and had notice of Assurance's subrogation interest prior to the settlement; and (3) the decision in *Richter v. Standard Mutual Insurance Co.*, 279 Ill. App. 3d 501, 664 N.E.2d 1140 (1996), was controlling and, pursuant to *Richter*, the dismissal order of the *Burdo* case did not result in Kenny's forfeiture of underinsured motorist benefits under Assurance's policy. Based on these findings, the court concluded that no material question of fact existed and that Kenny was entitled to judgment as a matter of law. The court further ordered Assurance to submit Kenny's underinsured claim to arbitration. This appeal followed.

## ANALYSIS

Assurance contends that the trial court erred in granting summary judgment in Kenny's favor because Kenny, by allowing dismissal of his action against Burdo with prejudice, destroyed Assurance's subrogation rights and, therefore, Kenny is not entitled to underinsured motorist benefits under Assurance's policy. According to Assurance, Kenny did not notify it of the Burdo settlement offer, nor did he timely advise it of the execution of the release, which violated the terms of Assurance's policy. With respect to the dismissal order, Assurance maintains that the dismissal with prejudice is a final adjudication and, therefore, any action it may attempt to bring against Burdo would be barred by the doctrine of *res judicata*. Assurance further argues that Kenny knew of Assurance's subrogation rights, and his attorney confirmed his knowledge and the fact that Kenny was obligated to protect those rights. According to Assurance, Kenny's argument, that he was not required to comply with the policy exclusions because he did not receive a copy of the policy, is disingenuous since he did not need to see the policy to be aware of Assurance's subrogation rights. With respect to Kenny's failure to obtain Assurance's consent to settle the *Burdo* case, Assurance argues that had it been informed of Kenny's intent to dismiss the case, it could have intervened to protect its subrogation rights.

Kenny counters that Assurance completely ignores *Richter*, which the trial court relied upon and is directly on point and controlling in this case. According to Kenny, like the defendant in *Richter*, Assurance failed to take the appropriate steps to secure its rights. Kenny argues that if Assurance had intended to pursue its subrogation rights, it had sufficient time to do so and should have moved to intervene in the *Burdo* case and then should have sought relief under section

2—1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2—1401 (West 1998)) to set aside the dismissal. Kenny further argues that because Assurance failed to do so, it cannot now complain. With respect to receiving a copy of the policy, Kenny maintains that because he did not receive a copy of the insurance policy, Illinois law will not allow Assurance to take advantage of a policy limitation or exclusion.

In response, Assurance first argues that regardless of whether Kenny had a copy of the policy and whether he knew of the exact language of the policy, he knew of Assurance's subrogation rights and that he had a duty to protect those rights. With respect to *Richter*, Assurance contends that it did not have an opportunity to intervene to prevent dismissal of the *Burdo* case because it did not receive notice of the dismissal until 30 days after it was entered. Assurance further maintains that, unlike the defendant in *Richter*, it had no advance notice or knowledge of the settlement in the *Burdo* case. Assurance also argues that the main focus of *Richter* was the effect of the release on the defendant's subrogation rights and the case is silent as to whether the dismissal was with prejudice or without prejudice. Lastly, Assurance maintains that *Richter* failed to analyze whether section 2—1401 relief was actually available to a defendant and that the *Richter* court erred in finding that section 2—1401 relief is not "extraordinary" because a proceeding based on section 2—1401, by its very nature, is an extraordinary proceeding.

In *Richter*, the plaintiff settled with an underinsured tortfeasor and her insurance carrier and executed an unlimited release. *Richter*, 279 Ill. App. 3d at 503. Subsequently, the plaintiff's attorney sent a letter to the defendant (plaintiff's own insurance carrier), informing it of the settlement and demanding settlement under the plaintiff's underinsured motorist provision. *Richter*, 279 Ill. App. 3d at 504. The defendant denied the claim, stating that the plaintiff had not sought its consent to settle and that it had not approved the settlement, as required by the insurance policy, and, therefore, the plaintiff was not entitled to underinsured motorist benefits. *Richter*, 279 Ill. App. 3d at 505. Thereafter, the plaintiff filed a declaratory judgment action against the defendant, seeking a declaration that the settlement did not prejudice the defendant's subrogation rights. *Richter*, 279 Ill. App. 3d at 503. The trial court concluded that the defendant's rights were not prejudiced by the release and settlement and, therefore, the plaintiff was not barred from recovery under her underinsured motorist policy provision with the defendant. *Richter*, 279 Ill. App. 3d at 503.

On appeal, the defendant first contended that the plaintiff's signing of the release without informing defendant of her intent to settle,

in violation of the policy provisions, prejudiced its subrogation rights. *Richter*, 279 Ill. App. 3d at 506. The *Richter* court disagreed, finding that crucial to the disposition of this issue was whether the tortfeasor or her carrier had notice of the defendant's subrogation rights. The *Richter* court relied on *Home Insurance Co. v. Hertz Corp.*, 71 Ill. 2d 210, 215, 375 N.E.2d 115 (1978), where the court held that an unlimited release that does not specifically include an amount designating coverage for the subrogation interest will not bar a subsequent subrogation action against the tortfeasor if the tortfeasor or his insurance carrier had knowledge of the insured's subrogation interest before the settlement. The *Richter* court concluded that the tortfeasor and her carrier did have notice of the defendant's subrogation interest before the plaintiff executed the release. *Richter*, 279 Ill. App. 3d at 507-08. The *Richter* court further noted that the release "did not include an amount designated as covering defendant's subrogation interest." *Richter*, 279 Ill. App. 3d at 508. Accordingly, the *Richer* court found that the defendant's subrogation rights survived the settlement. *Richter*, 279 Ill. App. 3d at 508.

The defendant in *Richter* next argued that it properly denied coverage because the policy was not applicable when an insured settles a claim without the written consent of the defendant. *Richter*, 279 Ill. App. 3d at 508. The *Richter* court again disagreed. It first noted that the defendant, who was attempting to limit liability based on an exclusion provision, "must affirmatively demonstrate the applicability of the policy exclusion." *Richter*, 279 Ill. App. 3d at 509. The court concluded that the defendant had ample notice of the impending settlement with the plaintiff, it could have sent a lien letter to the tortfeasor's carrier, and it clearly knew that the plaintiff intended to make a claim for underinsured coverage, which would require the tortfeasor's carrier to settle for the full limits of its policy because, under the defendant's policy, it would not be liable until the limits of any and all other applicable insurance policies had been paid to the plaintiff. *Richter*, 279 Ill. App. 3d at 509-10. The *Richter* court concluded that the plaintiff's complaint against the tortfeasor and the correspondence between the plaintiff's and the defendant's attorneys with respect to underinsured coverage

> "show[ed] that defendant had sufficient notice to prompt it, at the very least, to make further inquiries regarding plaintiff's suit *** in order to protect its subrogation rights. In light of these facts, defendant [could] hardly contend it had no prior notice that plaintiff intended to settle her claim ***. Moreover, defendant [could not] deny plaintiff coverage under the policy pursuant to its exclusion clause when it [was] defendant who failed to take the appropriate steps to secure its rights." *Richter*, 279 Ill. App. 3d at 510.

Lastly, the defendant in *Richter* argued that because it received notice of the settlement on the same day a dismissal order was entered, it had insufficient time to take any action to prevent entry of the dismissal order. *Richter*, 279 Ill. App. 3d at 510. The *Richter* court again rejected the defendant's argument, finding that, "[u]pon learning of the dismissal, defendant made no attempt to contact plaintiff's attorney or to take any legal action to protect its subrogation rights ***. Instead, defendant set about determining a manner in which to deny plaintiff recovery under the underinsured motorist provisions of the policy." *Richter*, 279 Ill. App. 3d at 511. The *Richter* court further stated:

> "To justify its course of action, defendant contends that it is not required to take any 'extraordinary' action to protect its subrogation rights because it is plaintiff's obligation to 'do nothing after loss to prejudice such rights.' Defendant's argument is flawed on two accounts: first, plaintiff's signing of the releases did not prejudice defendant's subrogation rights because the release did not specifically designate an amount for covering defendant's subrogation interest, and second, in the event defendant was uncertain as to the effects of the release on its rights, it would be incumbent upon defendant to take steps to safeguard its rights, especially because it might be bound by any resulting order or judgment. Filing a petition to intervene can hardly be termed an 'extraordinary' step to preserve defendant's interest. Further, as an intervenor, defendant would be entitled to all the rights of an original party, including the right to seek postjudgment relief pursuant to section 2—1401 of the Code." *Richter*, 279 Ill. App. 3d at 511.

Although the defendant argued it had no viable claim under section 2—1401, the *Richter* court stated that the defendant would have a viable claim against the tortfeasor to set aside the dismissal order because the defendant's subrogation rights were not barred by the release. *Richter*, 279 Ill. App. 3d at 511. See also *Schultz v. Gotlund*, 185 Ill. App. 3d 943, 950, 542 N.E.2d 53 (1989) (while the insured released the tortfeasor and the trial court dismissed the action against the tortfeasor, the appellate court concluded that there was a question whether the insurer's subrogation rights were still viable because the record did not contain any evidence whether the tortfeasor or his carrier knew of the subrogation rights prior to settlement, and the cause was remanded for a hearing to determine this issue and, if the trial court concluded that the tortfeasor or his carrier did have knowledge, the subrogation rights were not extinguished and the court was to determine the amount to which the insurer was entitled).

We agree with Kenny and the trial court that *Richter* is directly on point and controlling in the instant case. Contrary to Assurance's

argument, the *Richter* court based its holding on three rationales and it did not label one more important or crucial than another. In fact, the *Richter* court's discussion of the dismissal order is almost as lengthy as its discussion of the release issue. We note that in the instant case, Assurance only raises the issue of the dismissal order. We must conclude therefore that it concurs that Kenny's execution of the release alone does not bar its subrogation rights and that Kenny's failure to obtain consent to settle would not extinguish his right to underinsured benefits, as the *Richter* court held. We must also presume that Assurance does not contest the fact that Burdo and Allstate had knowledge of and were aware of Assurance's subrogation rights prior to settlement. Accordingly, we need not address the trial court's findings in these respects. We note, however, that like the defendant in *Richter*, because Assurance was aware of Kenny's lawsuit against Burdo and, pursuant to its policy, it would not be liable to Kenny until all other policies were exhausted and paid, Assurance had ample notice of an impending settlement with Burdo and could have, and should have, taken measures to protect its interests. As the defendant in *Richter*, Assurance did not take appropriate steps to secure its rights.

We also do not find the fact that the *Richter* decision is silent on whether the dismissal order was with or without prejudice significant. We can presume that the order was with prejudice and, thus, final. First, settlements generally require entry of an order of dismissal with prejudice—that is the purpose of a settlement, *i.e.*, to bring finality to the matter. Second, there is no evidence that the trial court retained any jurisdiction over the matter. Third, the *Richter* court referred to section 2—1401, which pertains only to final orders. As such, if the order in that case was without prejudice, it would not be final, and section 2—1401 would not have been applicable.

We also do not believe that because the defendant in *Richter* was advised of the settlement on the same day that the dismissal order was entered, whereas here, Assurance was notified 30 days later, is controlling. Again, the *Richter* court referred to section 2—1401, which pertains to relief from judgments 30 days after they are entered. Accordingly, the timing of notice to the defendant could not have been vital to the court's decision and does not mandate a different result in the instant case.

Lastly, with respect to Assurance's contention that the *Richter* court failed to analyze whether section 2—1401 relief was available, we do not believe this warrants our rejection of the *Richter* court's holding. As previously stated above, section 2—1401 provides for relief from final judgments or orders after 30 days following their entry. 735 ILCS 5/2—1401 (West 1998). The movant is required to file a petition

and support it by affidavit or other appropriate showing of matters not of record. In the instant case, in order to obtain section 2—1401 relief, Assurance would have needed to only file a petition to intervene and a motion to vacate judgment alleging error in entry of the dismissal order based on its subrogation rights. We do not believe this would have required extraordinary efforts on the part of Assurance. We note that while Assurance contends that filing a section 2—1401 motion is an extraordinary remedy, it has cited no authority to support this proposition and our independent research has revealed no cases so holding. Given the facts of the instant case, we conclude that relief under section 2—1401 would have been available to Assurance and that it would have been entitled to relief under that section.

We further note that because Assurance received notification of the dismissal order on the thirtieth day following its entry, Assurance could have proceeded under section 2—1301 of the Code (735 ILCS 5/2—1301 (West 1998)), allowing for relief from judgments within 30 days. While this may have required Assurance to move hastily, it was nonetheless an option available to it.

Based on the foregoing, we conclude that no material question of fact existed as to Kenny's right to underinsured motorist benefits and, therefore, the trial court properly granted summary judgment in favor of Kenny.

## CONCLUSION

For the reasons stated, we affirm the judgment of the circuit court of Cook County.

Affirmed.

CERDA and HALL, JJ., concur.