# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Progressive Direct Insurance Co. v. Jungkans**, 2012 IL App (2d) 110939

---

Appellate Court
Caption

PROGRESSIVE DIRECT INSURANCE COMPANY, Plaintiff-Appellee, v. KYLE JUNGKANS, Defendant-Appellant.


District & No.

Second District
Docket No. 2-11-0939


Filed

June 27, 2012


Held

(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*)

An insurance company was not entitled to a declaration that its insured violated their policy's cooperation clause when the insured settled with the driver of the vehicle that injured him, for the limits of the driver's policy, without notice to the insurer, where the driver was judgment proof and the insurer was not prejudiced by the settlement.


Decision Under
Review

Appeal from the Circuit Court of Kendall County, No. 10-MR-7; the Hon. Timothy J. McCann, Judge, presiding.


Judgment

Judgment for plaintiff reversed; judgment for defendant entered.

Counsel on Appeal

Michael W. Rathsack, of Law Offices of Michael W. Rathsack, of Chicago, and Kathleen T. Zellner and Douglas H. Johnson, both of Kathleen T. Zellner & Associates, P.C., of Downers Grove, for appellant.

Bill Porter and Reagan F. Goins, both of Chilton, Yambert & Porter, LLP, of Geneva, for appellee.

Panel

JUSTICE McLAREN delivered the judgment of the court, with opinion. Justices Zenoff and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1   Defendant, Kyle Jungkans, was injured while he was riding in a car driven by Billy Watts. He settled with Watts and Watts' insurer, State Farm Insurance Companies (State Farm), for State Farm's policy limit, then sought underinsured motorist (UIM) coverage under his policy with plaintiff, Progressive Direct Insurance Company. Plaintiff denied coverage, on the basis that defendant's failure to notify it in advance of the settlement violated the policy's cooperation clause. Plaintiff filed an action for a declaratory judgment (735 ILCS 5/2-701 (West 2010)). The trial court granted plaintiff summary judgment (735 ILCS 5/2-1005(c) (West 2010)). Defendant appeals. We reverse the judgment and enter judgment for defendant.

¶ 2   Defendant's policy with plaintiff included UIM coverage, with limits of $250,000 per person and $500,000 per occurrence. On September 24, 1999, defendant was seriously injured while riding in a car driven by Watts. Jennifer Walker owned the car, and her policy with State Farm had limits of $100,000 per person and $300,000 per occurrence. Defendant sued Watts for negligence. On November 6, 2009, he settled with Watts for the policy limit of $100,000. Defendant and Watts signed a release discharging Watts and Walker from future liability for the accident. Defendant did not notify plaintiff of the release until November 30, 2009.

¶ 3   Defendant then sought UIM coverage from plaintiff. Plaintiff denied the coverage, asserting that, by releasing Watts, defendant had violated the policy's cooperation clause and had cut off plaintiff's right of subrogation against Watts and State Farm. Plaintiff filed a complaint for a declaratory judgment to this effect, attaching a copy of the policy. The two pertinent policy provisions follow. The first is the cooperation clause:

"**NOTICE AND CONSENT REQUIREMENTS**

An **insured person** must notify **us** in writing at least 30 days before entering into any settlement with the **owner** or operator of an **uninsured motor vehicle** or an

-2-

**underinsured motor vehicle**, or any liability insurer. In order to preserve **our** right of subrogation, **we** may elect to pay any sum offered in settlement by, or on behalf of, the owner or operator of an **uninsured motor vehicle** or an **underinsured motor vehicle**. If **we** do this, **the insured person** agrees to assign to **us** all their rights against the owner or operator of the **uninsured motor vehicle** or **underinsured motor vehicle**, to the extent of **our** payment.

Any judgment or settlement for damages against an owner or operator of an **uninsured motor vehicle** or an **underinsured motor vehicle** that arises out of a lawsuit brought without **our** written consent is not binding on **us**." (Emphases in original.)

The second pertinent provision reads:

"**OUR RIGHTS TO RECOVER PAYMENT**

**We** are entitled to the rights of recovery that the insured person to whom payment was made has against another, to the extent of **our** payment. That insured person may be required to sign documents related to the recovery and must do whatever else **we** require to help **us** exercise those recovery rights, and do nothing after an accident or loss to prejudice those rights.

However, **we** may not assert rights of recovery against the owner or operator of an **uninsured motor vehicle** or an **underinsured motor vehicle**, if the person seeking coverage under Part III–Uninsured/Underinsured Motorist Coverage provides **us** with written notice at least 30 days prior to entering into a settlement that an offer of settlement has been made by, or on behalf of, the owner or operator of an **uninsured motor vehicle** or an **underinsured motor vehicle**, and if **we** do not elect to pay to, or on behalf of, that person an amount equal to the amount offered in full settlement by, or on behalf of, the owner or operator of the **uninsured motor vehicle** or **underinsured motor vehicle**.

When an insured person has been paid by **us** and also recovers from another, the amount recovered will be held by the insured person in trust for **us** and reimbursed to **us** to the extent of **our** payment. If **we** are not reimbursed, **we** may pursue recovery of that amount directly against that insured person.

If an insured person recovers from another without **our** written consent, the insured person's right to payment under any affected coverage will no longer exist.

\* \* \*

These provisions will be applied in accordance with state law." (Emphases in original.)

¶ 4 Plaintiff's complaint contended that, by releasing Watts without first timely notifying plaintiff, defendant violated the cooperation clause and destroyed plaintiff's right of subrogation, and that, as a result, defendant had forfeited any UIM payments.

¶ 5 Defendant moved to dismiss the complaint (see 735 ILCS 5/2-619(a)(9) (West 2010)). As pertinent here, he argued that, even if he had violated the cooperation clause, plaintiff still could not recover. That was because, since the time of the accident, Watts had no significant assets, so that plaintiff had suffered no substantial prejudice from losing its subrogation right.

¶ 6 Defendant's motion attached several documents. The first, a letter dated January 22,

2010, from Edward R. Kirby & Associates, Inc. (Kirby), a private investigator, to defendant's attorney, Kathleen T. Zellner & Associates, P.C. (Zellner), stated that Kirby's "limited investigation" had shown that Watts' only "readily identifiable" assets were three 1995 motor vehicles. Moreover, there was an unsatisfied 2005 judgment against him for $5,249; two paternity suits had been filed against him; and, on January 8, 2010, he had been sentenced to four years in prison for aggravated driving under the influence of alcohol, apparently based on the accident that had injured defendant. The letter concluded, "Given that [Watts] is currently incarcerated and we find no immediate assets, we are discontinuing any further investigation at this time."

¶ 7   Defendant's motion attached another letter from Kirby to Zellner, dated February 18, 2010, stating that a "limited investigation" had revealed that Walker had no "assets of note" other than two vehicles, including the car involved in the accident. Finally, the motion attached a letter dated January 14, 2010, from Asia Bell, a claims representative for State Farm, to Zellner. It stated:

"Per our conversation *** today ***, Billy Watts has no other insurance with State Farm and per our policyholder Ms. Walker neither one of them [has] any assets. State Farm has reimbursed [plaintiff] the $5,000 in [*sic*] which they paid for medical payments."

¶ 8   After the trial court denied defendant's motion to dismiss, he filed an answer that included several "affirmative defenses," including that plaintiff had not been prejudiced by his settlement with Watts and that the settlement had not extinguished its subrogation right.

¶ 9   The parties filed cross-motions for summary judgment. Plaintiff's motion argued that, because defendant had violated the cooperation clause, he could not recover UIM benefits. Plaintiff asserted that, under *Home Insurance Co. v. Hertz Corp.*, 71 Ill. 2d 210, 215 (1978), because the unlimited release did not specifically designate an amount to cover plaintiff's subrogation interest, plaintiff could not bring an action against Watts unless, before the release was executed, Watts or State Farm had known of plaintiff's interest. However, there was no evidence that either one had known. Addressing defendant's no-prejudice argument, plaintiff contended that a judgment against Watts would not have been limited to Watts' assets at the time of Kirby's investigation. Further, it was not for defendant to say whether plaintiff would pursue a subrogation action.

¶ 10   Defendant's motion for summary judgment conceded that he had violated the cooperation clause. However, he contended that the *Hertz* rule favored him because, before the release was signed, Walker (whom defendant characterized as a tortfeasor) and State Farm had indeed known of plaintiff's subrogation interest. Defendant relied on affidavits by Walker and Bell. Walker's affidavit stated that, as of November 6, 2009, she knew that plaintiff had the right to sue her. Bell's affidavit stated as follows. She had processed the settlement of the claim between defendant and Watts. State Farm reimbursed plaintiff "for the $5000.00 in [*sic*] which they [*sic*] paid for medical payments for [defendant]." Bell "had knowledge of [plaintiff's] subrogation rights with regard to [defendant's] claim prior to the release being executed on November 6, 2009."

¶ 11   In response to defendant's motion for summary judgment, plaintiff asserted in part that,

under *Farmers Automobile Insurance Ass'n v. Suligoy*, 180 Ill. App. 3d 896, 898 (1989), the "knowledge issue" was an affirmative defense that defendant had failed to raise in his answer and thus had forfeited. Also, plaintiff asserted, Bell's affidavit was insufficient to prove that she had known, pre-release, of plaintiff's specific right of subrogation against Watts. Defendant replied that Bell's affidavit implied that she had known of the specific right involved in this case, and he added that he had raised the "knowledge issue" in his affirmative defenses.

¶ 12    The trial court granted summary judgment to plaintiff (and thus denied summary judgment to defendant), explaining first that Walker's affidavit was irrelevant because she was neither the tortfeasor nor the tortfeasor's insurer. Further, the court noted, the release did cut off plaintiff's right of subrogation against Watts. There was no assurance that Watts would have been judgment-proof–he could have come into a large sum of money, however unlikely the possibility–and, even had he been judgment-proof, plaintiff would have had the right to file an action against him anyway. Defendant timely appealed.

¶ 13    On appeal, defendant advances two arguments for why the trial court erred in granting plaintiff summary judgment and denying him summary judgment. First, plaintiff's right of subrogation survived defendant's settlement with Watts, because State Farm knew of plaintiff's subrogation right before the settlement. Second, plaintiff may not escape its obligations by relying on his violation of the cooperation clause, because plaintiff failed to establish that it was substantially prejudiced or even to raise a genuine factual issue on this score. Plaintiff responds first that (a) defendant waived or forfeited the "knowledge" defense, because he did not plead it as an affirmative defense; and (b) defendant failed to raise a genuine issue on the matter of foreknowledge, much less to establish as a matter of law that State Farm knew in advance of plaintiff's subrogation right. Plaintiff responds second that it proved that defendant's failure to notify it timely of the settlement did cause it prejudice. For the following reasons, we agree with defendant.

¶ 14    Summary judgment is proper when the pleadings, depositions, and other matters on file, when viewed in the light most favorable to the nonmovant, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2010); *Shannon v. Boise Cascade Corp.*, 208 Ill. 2d 517, 523-24 (2004). Our review is *de novo. Morris v. Margulis*, 197 Ill. 2d 28, 35 (2001).

¶ 15    We turn first to the "knowledge" issue. Relying on *Suligoy*, plaintiff contends that defendant forfeited this defense because he failed to plead it in his answer. *Suligoy* does state that knowledge is an affirmative defense that must be pleaded. *Suligoy*, 180 Ill. App. 3d at 898. However, we agree with defendant that this holding–which *Suligoy* assumed rather than supported with case law or reasoning–contradicts the established rule that an insurer who invokes a cooperation clause must affirmatively show that it was prejudiced by the insured's failure to notify it in advance of his settlement with the tortfeasor. See *M.F.A. Mutual Insurance Co. v. Cheek*, 66 Ill. 2d 492, 499-500 (1977); *Marsh v. Prestige Insurance Group*, 58 Ill. App. 3d 894, 896 (1978).

¶ 16    Thus, in *Richter v. Standard Mutual Insurance Co.*, 279 Ill. App. 3d 501 (1996), the insurer contended that it need not provide coverage, because the insured had settled with the

tortfeasor without first obtaining the insurer's consent. Disagreeing, the appellate court held that, once the insured had brought his accident within the terms of the policy, the insurer had the burden to prove that the cooperation clause applied and barred recovery. *Id.* at 508-09. Here, plaintiff has never denied that defendant's UIM claim is within the scope of the policy; it has instead relied on the cooperation clause, and the related subrogation-rights provision, to defeat an otherwise valid claim. Therefore, per *Richter*, we conclude that defendant did not need to raise the "knowledge" issue as an affirmative defense in his answer. Parenthetically, we note that defendant arguably did so, as his answer alleged that plaintiff's subrogation right was not extinguished by his settlement with Watts.

¶ 17   We turn to the merits of defendant's first argument on appeal. Defendant notes the holding of *Home Insurance Co*, 71 Ill. 2d at 215:

"[A]n unlimited release executed by an insured-subrogor for consideration not specifically including an amount designated as covering the insurer's subrogation interest does not bar a subsequent subrogation action by an insurer-subrogee against the tortfeasor, if the tortfeasor *or* his insurance carrier had knowledge of the insurer-subrogee's interest prior to the release." (Emphasis added.)

¶ 18   Defendant observes that the use of "or" instead of "and" demonstrates that prior knowledge by either the tortfeasor or his insurer will preserve the subrogation right of the victim's insurer. See also *Richter*, 279 Ill. App. 3d at 507-08 (accident victim's insurer did not lose subrogation right by settlement that was obtained without insurer's consent, because tortfeasor's insurer knew in advance of settlement that insurer had that right). He maintains that Bell's affidavit established that in advance of the settlement State Farm knew of plaintiff's right to be subrogated to defendant against Watts. Plaintiff responds that Bell's affidavit was insufficient because it stated no facts to show that Bell knew that plaintiff intended "to pursue its subrogation interest against Mr. Watts for any monies paid to [d]efendant under the [UIM] policy." Defendant replies that there was no requirement that State Farm know what plaintiff intended to do at some later point.

¶ 19   We agree with defendant that there is no genuine dispute that State Farm knew in advance of the settlement that plaintiff had a subrogation right against Watts and that this was sufficient to defeat the invocation of the cooperation clause. Bell said plainly that she knew in advance of plaintiff's subrogation right. Although this statement was a conclusion, it hardly required elaboration; Bell would have known whether she had been aware of plaintiff's subrogation right, a routine fact of insurance litigation. Under the case law, that was sufficient. Thus, there is no genuine issue of fact as to whether plaintiff retained its subrogation right, especially as, per *Richter*, it was ultimately plaintiff's burden to prove that defendant's settlement cut off that right.

¶ 20   Further, even were we to hold that there was a genuine issue of material fact on the issue of knowledge, the judgment still cannot stand, because plaintiff failed to raise a factual issue on whether it was prejudiced by defendant's noncompliance with the cooperation clause.

¶ 21   As plaintiff concedes, it may not enforce the cooperation clause unless it proves that defendant's failure to notify it timely of the settlement substantially prejudiced it. *Cheek*, 66 Ill. 2d at 499-500; *Marsh*, 58 Ill. App. 3d at 897. Plaintiff contends that it suffered prejudice

because its subrogation right was abrogated by the settlement. Defendant responds that the mere loss of the subrogation right does not satisfy the prejudice requirement and that, because all the evidence showed that Watts was judgment-proof, there was, as a matter of law, no prejudice. For the following reasons, we agree with defendant both that a judgment-proof tortfeasor defeats a claim of prejudice and that Watts fit this description.

¶ 22 Apparently, only one Illinois opinion addresses whether a judgment-proof tortfeasor negates an insurer's claim of substantial prejudice from its insured's violation of a cooperation clause. The import of that opinion is unclear, however. In *Mulholland v. State Farm Mutual Automobile Insurance Co.*, 171 Ill. App. 3d 600 (1988), cited by neither party, the plaintiff settled against Rudy, one of the alleged tortfeasors in the accident that injured three people whose estates the plaintiff represented. Rudy paid the limit of her policy with Allstate. The plaintiff did not timely notify State Farm of the settlement but sought UIM benefits from State Farm. In response, State Farm invoked a cooperation clause, which disallowed UIM benefits to an insured who settled a lawsuit without consent and thereby "hurt[ ]" State Farm's right to recover from the tortfeasor. The trial court held that the clause did not apply. It explained that State Farm had not been "hurt" by a settlement because nothing in the record showed that Rudy, who had been 16 years old at the time, had had any assets other than the Allstate policy. *Id.* at 605.

¶ 23 The appellate court affirmed. The court agreed with the trial court that State Farm could not have been "hurt" by the plaintiff's settlement with a tortfeasor who had had no significant assets other than the insurance policy that had supplied all the money for the settlement. *Id.* This holding would appear to have been dispositive by itself; it meant that the cooperation clause did not apply. Nonetheless, the court went on to consider State Farm's argument that it had been "hurt" by the loss of its subrogation rights, regardless of their value or lack of it. The court did not decide whether the mere loss of subrogation rights established harm. Instead it ruled that State Farm's subrogation rights had not been cut off, because Allstate had known before the settlement was reached of State Farm's subrogation rights. *Id.* at 607.

¶ 24 *Mulholland*'s import is unclear. Read in isolation, the first holding that we have summarized would seem to establish that showing "substantial prejudice" requires proving more than the loss of subrogation rights; it requires proving further that those rights were actually worth something other than the ability to litigate. Although the holding turned on the meaning of the word "hurt" in the cooperation clause, we see no difference between saying that an insurer is "hurt" by noncooperation and saying that the insurer is "prejudiced" by it. Thus, for practical purposes, the *Mulholland* court held that a judgment-proof tortfeasor, such as Rudy, defeats an insurer's claim that it was substantially prejudiced by the insured's violation of a cooperation clause. Nonetheless, the court went on to consider separately State Farm's argument that it had been "hurt" merely by the loss of its subrogation rights, even though the court had just stated that those rights were worthless.[1] Thus,

---

[1]As *Marsh* noted, the "apparent purpose" of a cooperation clause is to protect the insurance company's subrogation rights. *Marsh*, 58 Ill. App. 3d at 897; accord *State Farm Mutual Automobile Insurance Co. v. Fennema*, 2005-NMSC-010, ¶ 9, 137 N.M. 275, 110 P.3d 491. Thus, it is curious

*Mulholland* does not appear to be internally consistent. As Illinois case law is unclear, we turn to foreign jurisdictions, where the law is both clear and consistent.

¶ 25    Numerous jurisdictions have held that an insurer may not rely on a technical violation of a cooperation clause to deny coverage if the tortfeasor with whom the insured settled was judgment-proof.[2] See *Muth v. AIU Insurance Co.*, 982 So. 2d 749, 752 (Fla. Dist. Ct. App. 2008); *Bantz v. Bongard*, 864 P.2d 618, 623-24 (Idaho 1993); *Kapadia v. Preferred Risk Mutual Insurance Co.*, 418 N.W.2d 848, 852 (Iowa 1988); *Greenvall v. Maine Mutual Fire Insurance Co.*, 1998 ME 204, ¶¶ 11, 12, 715 A.2d 949; *MacInnis v. Aetna Life & Casualty Co.*, 526 N.E.2d 1255, 1259-60 (Mass. 1988); *Sorensen v. Farmers Insurance Exchange*, 927 P.2d 1002, 1005 (Mont. 1996); *Thrower v. Anson*, 752 N.W.2d 555, 563 (Neb. 2008) (interpreting statute requiring insurer to prove that it was "adversely affected" by settlement); *Fennema*, 2005-NMSC-010, ¶¶ 11, 12, 137 N.M. 275, 110 P.3d 491; *Hasper v. Center Mutual Insurance Co.*, 2006 ND 220, ¶ 18, 723 N.W.2d 409; *Federated Service Insurance Co. v. Granados*, 889 P.2d 1312, 1315-16 (Or. App. 1995); *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 694 (Tex. 1994); *State Farm Mutual Automobile Insurance Co. v. Green*, 2003 UT 48, ¶¶ 31-34, 89 P.3d 97; *Thiringer v. American Motors Insurance Co.*, 588 P.2d 191, 193 (Wash. 1978). The reason for this rule is straightforward: the mere right to sue the tortfeasor is of no value if there is no reasonable likelihood of obtaining a judgment that is worth the cost of litigation. As one court said in applying the prejudice rule to reject an insurer's reliance on a cooperation clause where the tortfeasor was judgment-proof:

> "A judgment against [the tortfeasor] would not have been worth the paper it was printed on and no reasonable person would have expended the costs, let alone the attorney's fees, it would have required to get it. When [the insurer] lost the opportunity to secure the judgment, it lost nothing. Under our law, a technical and illusory 'loss' of this kind cannot result in the forfeiture of insurance coverage." *Southeastern Fidelity Insurance Co. v. Earnest*, 395 So. 2d 230, 231 (Fla. Dist. Ct. App. 1981).

¶ 26    We agree that "[a]llowing an insurer to avoid coverage when it lost subrogation rights which carried no reasonable possibility of collection beyond the tendered policy limits would constitute a forfeiture and 'would produce an undeserved windfall to the insurance

---

that the *Mulholland* court first held that the cooperation clause should be disregarded because the worthlessness of State Farm's subrogation rights meant that it had suffered no prejudice–yet then considered State Farm's argument that it had been prejudiced by the alleged loss of those rights.

[2]This statement does not, of course, include jurisdictions that do not require a showing of substantial prejudice. However, it does include one jurisdiction (New Mexico) that holds that the breach of a cooperation clause creates a rebuttable presumption of prejudice (see *Fennema*, 2005-NMSC-010, ¶¶ 11, 12, 137 N.M. 275, 110 P.3d 491), although of course there the burden of proof is reversed. As *Marsh* makes clear, Illinois requires substantial prejudice and does not afford the insurer a rebuttable presumption of prejudice based on the mere breach.

company.' " *Hasper*, 2006 ND 220, ¶ 18, 723 N.W.2d 409 (quoting *Bantz*, 864 P.2d at 624).[3] A cooperation clause exists to protect the insurance company's substantial interests, not merely to afford it the chance to litigate for the sheer joy of it. We also note that the substantial-prejudice rule requires just that: *substantial* prejudice. Thus, the theoretical possibility that the tortfeasor might win the lottery or inherit millions before the statute of limitations runs (neither having happened here yet) does not create a reasonable possibility that the insurer will obtain significant relief by pursuing an action against him. As one court noted, allowing such farfetched theoretical possibilities to amount to substantial prejudice would "completely negate" the prejudice requirement. *Earnest*, 395 So. 2d at 231.

¶ 27    Although the question of prejudice is ordinarily one of fact (see *Marsh*, 58 Ill. App. 3d at 896; *Hasper*, 2006 ND 220, ¶ 19, 723 N.W.2d 409), a question of fact may become one of law, amenable to disposition by summary judgment, if the undisputed facts allow only one reasonable conclusion (see *Nolan v. Johns-Manville Asbestos*, 85 Ill. 2d 161, 171 (1981)). That is the situation here. We hold that defendant was entitled to summary judgment because he established as a matter of law that plaintiff cannot meet its burden to prove that it suffered substantial prejudice from defendant's settlement with Watts. Plaintiff adduced *no* evidence that Watts had any assets of note.[4] Defendant adduced unrebutted evidence that, from the time of the accident through the close of Kirby's investigation into Watts' finances, Watts had minimal assets, was subject to two unsatisfied judgments (with the possibility of more judicially imposed financial obligations), and was serving a four-year prison term.[5] Not only do these facts defeat plaintiff's motion for summary judgment, they establish that defendant is entitled to judgment as a matter of law because plaintiff may not invoke its policy's cooperation clause in order to deny defendant UIM coverage. We reverse the judgment in favor of plaintiff and enter judgment for defendant (see Ill. S. Ct. R. 366(a)(5) (eff. Feb. 1, 1994)).

¶ 28    Judgment for plaintiff reversed; judgment for defendant entered.

---

[3]We note that several courts have held that deciding whether an insurer was prejudiced by the insured's violation of a cooperation clause requires considering all of the relevant factors, such as the amount of the tortfeasor's assets, the likelihood of recovery via subrogation, the extent of the insured's damages, and the expenses and risks of litigating the insured's cause of action. See *Kapadia*, 418 N.W.2d at 852; *Hasper*, 2006 ND 220, ¶ 18, 723 N.W.2d 409; *Green*, 2003 UT 48, ¶ 33, 89 P.3d 97. This general statement is not inconsistent with the conclusion that, if the tortfeasor is clearly judgment-proof, then the insurer cannot prove substantial prejudice.

[4]We agree with the trial court that Walker's financial situation was irrelevant because she was neither the tortfeasor nor the insurer.

[5]According to the Department of Corrections Web site, Watts was placed on mandatory supervised release on September 29, 2011, and his anticipated discharge date is September 29, 2012. www2.illinois.gov/idoc/Offender/Pages/InmateSearch.aspx (last visited May 17, 2012).